Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000003
27-NOV-2019
09:03 AM

NO. CAAP-16-0000003

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee/Cross-Appellant, v.
LARRY IKIMAKA, Defendant-Appellant/Cross-Appellee,
LIANE HENDERSON, CHERI NUMAZAWA,
Defendant-Appellee/Cross-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CR. NO. 14-1-0306)

MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Fujise and Chan, JJ.)

Defendant-Appellant/Cross-Appellee Larry Ikimaka
(Ikimaka) appeals from the December 30, 2015 Second Amended
Judgment of Conviction and Probation Sentence Notice of Entry
(Judgment) entered by the Circuit Court of the Fifth Circuit
(Circuit Court).[1]  After a jury trial, the Circuit Court
convicted Ikimaka of Promoting a Dangerous Drug in the Second
Degree (Promoting Second) in violation of Hawaii Revised Statutes
(HRS) § 712-1242(1)(b)(i) (Supp. 2018),[2] and Prohibited Acts
Related to Drug Paraphernalia (Possession of Paraphernalia) in

---

[1]     The Honorable Randal G.B. Valenciano presided.

[2]     HRS § 712-1242(1)(b)(i) provides:  "(1) A person commits the
offense of promoting a dangerous drug in the second degree if the person
knowingly: . . . (b)  Possesses one or more preparations, compounds, mixtures,
or substances of an aggregate weight of:  (i) One-eighth ounce or more,
containing methamphetamine, heroin, morphine, or cocaine or any of their
respective salts, isomers, and salts of isomers[.]"

violation of HRS § 329-43.5(a) (2010).[3] Ikimaka was sentenced, *inter alia*, to a four-year term of probation with the special condition that he serve nine months in prison.

Plaintiff-Appellee/Cross-Appellant State of Hawai'i (State) appeals from the December 11, 2015 Order Granting Defendant Larry Ikimaka's Motion for Stay of Execution of Sentence Pending Appeal (Order Granting Stay).

Ikimaka contends in his appeal that the Circuit Court erred by denying his Motion for a New Trial because: (1) the State failed to lay a proper foundation to admit drug weight or composition test results; (2) the court permitted improper hearsay evidence; (3) a police officer witness was permitted to speculate as to Ikimaka's state of mind; (4) the deputy prosecutor (DPA) committed misconduct by eliciting testimony on Ikimaka's silence after receiving Miranda warnings; and (5) the court failed to sever Ikimaka's trial from that of the

---

[3]    HRS § 329-43.5(a) read at the time of the conviction:

> (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706-660 and, if appropriate as provided in section 706-641, fined pursuant to section 706-640.

HRS § 329-1 (2010) defines "drug paraphernalia" to mean, in relevant part:

> all equipment, products, and materials of any kind which are used, primarily intended for use, or primarily designed for use . . . storing, containing, concealing, . . . , ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this chapter. It includes but is not limited to:
>
> . . . .
>
> (9)    Capsules, balloons, envelopes, and other containers used, primarily intended for use, or primarily designed for use in packaging small quantities of prohibited controlled substances;
>
> (10)   Containers and other objects used, primarily intended for use, or primarily designed for use in storing or concealing prohibited controlled substances[.]

codefendant. Ikimaka also argues that his Motion for Judgment of Acquittal should have been granted because there was insufficient evidence of actual or constructive possession.[4]

On cross-appeal, the State argues the Circuit Court abused its discretion by granting Ikimaka's Motion to Stay of Execution of Sentence Pending Appeal because it failed to adhere to the requirements of HRS § 804-4(b) (2014).[5]

---

[4] Ikimaka's points of error are in noncompliance with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) as they fail to state "where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court[,] . . . [including] a quotation of the grounds urged for the objection and the full substance of the evidence admitted or rejected[.]" Consequently, "[p]oints not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented." Id.

Furthermore, subpoint (5) as it appears in his opening brief, in which Ikimaka alleges "the Court's jury instruction regarding constructive possession was incomplete[,]" is not discussed in his argument section and is deemed waived. HRAP Rule 28(b)(7); see also Kakinami v. Kakinami, 127 Hawai'i 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012) (citing In re Guardianship of Carlsmith, 113 Hawai'i 236, 246, 151 P.3d 717, 727 (2007) ("noting that this court may 'disregard a particular contention if the appellant makes no discernible argument in support of that position'") (brackets omitted). Counsel is warned that future violation of the HRAP may result in sanctions, including striking the brief or portions thereof and monetary sanctions.

Finally, to facilitate our review, Ikimaka's points have been reorganized and renumbered for coherence.

[5] HRS § 804-4(b) provides:

(b) The court shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the court finds:

(1) By clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released; and

(2) That the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

If the court makes these findings, the court shall order the release of the person in accordance with section 804-7.1. No defendant entitled to bail, whether bailed or not, shall be subject, without the defendant's written consent, to the operation of any sentence passed upon the defendant, while any proceedings to procure a review of any action of the trial court or jury in the premises are pending and undetermined, except as provided in section 641-14(a) [regarding stays of sentence during the time for filing the notice of appeal] or section 712-1207 [regarding street solicitation of prostitution].

**Background.**

On October 13, 2014, at approximately 2:30 a.m., Kaua'i Police Department (KPD) Officer Hanson Hsu (Officer Hsu) was dispatched to respond to a report alleging Cheri Numazawa's (Numazawa) purse was in a gold Chevy truck. On the way to the scene, Officer Hsu recognized the truck driving the opposite direction on Kuhio Highway and initiated a traffic stop. Ikimaka was driving the truck. Officer Hsu, who was familiar with Ikimaka, informed Ikimaka that Numazawa had made a complaint against Ikimaka. Officer Hsu asked Ikimaka and passenger Liane Henderson (Henderson) to exit the vehicle and sit on the curb until KPD could contact Numazawa. Officer Hsu's beat partner Officer Roldan Agbayani (Officer Agbayani) arrived to assist him. Other officers located Numazawa who stated she wanted her purse back from Ikimaka but did not want to press charges. Officer Hsu initiated an evidence tow for the truck. Officer Agbayani informed Officer Hsu that he had advised Ikimaka of his constitutional rights, that Ikimaka wanted to talk to a lawyer, and that Ikimaka walked over to Officer Agbayani and "spontaneously uttered that [he had] Cheri's bag in [his] truck, can you just arrest me for theft and don't take my truck[?]" The truck was towed to the KPD evidence warehouse and put into the custody of Evidence Custodian Kristal Nebre (Nebre).

Pursuant to a search warrant for the truck, police retrieved: (1) one black purse containing Henderson's driver's license and zip-lock bags containing crystallized substances, (2) one Dooney and Burke purse in which a wallet containing numerous items bearing Numazawa's name, a glass pipe with residue, a digital scale, a sponge, a clear zip-lock bag with crystallized substances or residue were found, and (3) a maroon bag found under the driver's seat containing a glass pipe with residue, an Ace Hardware receipt bearing the name "Larry Ikimaka," $1,400 in cash, a scale, and several zip-lock bags.

Ikimaka was charged with Promoting Second and Possession of Paraphernalia. In the same Felony Information and Non-Felony Complaint (Information) that charged Ikimaka, Henderson was charged with Promoting a Dangerous Drug in the

4

Third Degree in violation of HRS § 712-1243(1) (2014)[6] (Promoting Third), Possession of Paraphernalia, and Promoting a Detrimental Drug in the Third Degree in violation of HRS § 712-1249 (2014).[7] Numazawa was also charged in the same Information with Promoting Third and Possession of Paraphernalia.

Prior to trial, the Circuit Court took argument on Ikimaka's motion to sever his trial from that of Numazawa.[8] Ikimaka anticipated that Numazawa would attempt to blame him for the drugs and argued there was an irreconcilable conflict in the defenses. The court rejected this basis and denied the motion. The court also noted that jury instructions could clarify which defendant was being accused of possessing particular drugs.

On August 10, 2015, the court heard argument on motions in limine, the transcript of which is not part of the record on appeal. Ikimaka's four motions in limine sought to exclude: (1) witnesses not disclosed before the pretrial deadline; (2) "any testimony or evidence referencing any items not related to charges filed against" Ikimaka; (3) any testimony or evidence "referencing the Ace Hardware receipt" on the basis that the information contained therein was more prejudicial than probative; and (4) statements made by Ikimaka or Numazawa unrelated to the present charges. Specifically, Ikimaka sought to exclude his statements: "I have Cheri's bag in my truck. Can you just arrest me for theft and don't take my truck[?]"; and "Could I just give her purse back in [sic] be done with it?" Ikimaka also sought to exclude Numazawa's statements from: (1) when police made contact:

---

[6]     HRS § 712-1243(1) provides: **"Promoting a dangerous drug in the third degree.** (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount."

[7]     HRS § 712-1249(1) provides: **"Promoting a detrimental drug in the third degree.** (1) A person commits the offense of promoting a detrimental drug in the third degree if the person knowingly possesses any marijuana or any Schedule V substance in any amount."

[8]     Henderson had previously entered a plea of no contest.

> What the fuck are you guys doing here? Did you guys arrest Larry? I just like my purse back. There's a Rolex in it. I no like press charges. Can you guys just get my purse back from Larry? I no like make one statement. Yeah, he took my purse but I no like get him in trouble.

and (2) the scene of the traffic stop:

> Can I take my purse out of the truck? Why are you guys seizing the truck? See Larry is all your fucking fault. Nah, I know what for say, I just going tell them that I had lie [sic] because I was mad. All you fuckas is crooked cops.

The court denied motions in limine (2), (3), and (4), but excluded references to the Rolex watch and "evidence and/or testimony in which Defendant NUMAZAWA accuses Defendant IKIMAKA of striking her or stealing her purse." The court, however, specifically permitted testimony of Numazawa's ownership of the purse.

At trial, the State presented six witnesses: State Drug Analyst Stacy Riede (Riede),[9] KPD Records Unit Supervisor Eunice Apeles (Apeles), Officer Hsu, Officer Agbayani, Nebre, and KPD Officer Creighton Tamagawa (Officer Tamagawa).

Riede testified to the weights and composition of the substances that she identified as methamphetamine seized from the truck as well as to the instruments used in making those identifications, discussed in detail below. During Riede's testimony, Ikimaka objected to instrument service records for lack of foundation. The Circuit Court admitted the records over Ikimaka's objections.

On direct examination, Officer Hsu testified to: his experience as an officer; the events on the morning of October 13, 2014; seeing Ikimaka driving the truck previously; the process of seizing the truck; obtaining and executing the search warrant for the truck at the KPD warehouse; and the exhibits and their locations within the truck. Ikimaka renewed his objection to the Ace Hardware receipt bearing his name. Ikimaka elicited the following testimony from Officer Hsu on cross-examination:

---

[9] Inconsistently identified in briefs and transcripts as Stacey (or Stacy) Reide (or Riede).

6

> [Ikimaka's counsel]: And you have no way of knowing whether Mr. Ikimaka --
>
> THE COURT: Approach.
>
> (The following was heard at the bench.)
>
> THE COURT: You just realize you asked a very open-ended question and --
>
> [Ikimaka's counsel]: I knew the answer, Judge.
>
> THE COURT: So it's real risky. I just want to say I thought it was a very risky question and that is open for the redirect examination. Okay. Thank you.
>
> (The following was heard in open court.)
>
> [Ikimaka's counsel]: Officer [Hsu], you have no way of knowing whether Mr. Ikimaka ever intended to possess any of those drugs; correct?
>
> [Officer Hsu]: Correct.

The State objected on the bases of speculation and that it was a question for the jury. The court stated:

> I think I'm going to allow him to answer because this is another area of redirect that you can go into. The door was opened, how you establish intent and all of that. You can do what you need to, but the issue of intent was raised by [Ikimaka's counsel], but only for Mr. Ikimaka[.]

Officer Hsu acknowledged that he did not know if Ikimaka shopped at Ace Hardware, did not know if the receipt was genuine, had not interviewed Ace Hardware employees, had not checked store surveillance cameras, had not questioned anyone whether they shopped at Ace Hardware, and that club card accounts do not verify the user's identity. On cross-examination, he was asked, "So you started an investigation based on the fact that she reported that somebody had taken her items without permission; correct?" Ikimaka objected to the phrase "without permission[,]" and the court struck that portion of the question. Officer Hsu agreed that he was aware Ikimaka said to Officer Agbayani that "he had Cheri's bag in his truck. 'Can you just arrest me for theft and don't take my truck[?]'"

On redirect examination, the following exchange took place:

> [Deputy Prosecuting Attorney (DPA)]: Now, I believe [Ikimaka's counsel] asked about Larry Ikimaka's intent regarding the drugs found in the vehicle. As a police officer, would you say that Larry Ikimaka had intent to possess drugs, had knowledge of drugs, if he stated "Just arrest me and don't take my truck"?

7

[Ikimaka's counsel]: May we approach?

[Officer Hsu]: Yes.

THE COURT: Approach. (The following was heard at the bench.)

[Ikimaka's counsel]: I think it calls for speculation.

THE COURT: This is all the intent questions that was asked about what the intent that was asked during cross-examination.

[Ikimaka's counsel]: But the intent--but he can't testify--he's speculating as to what my client.

THE COURT: You asked him to speculate about intent, so this is just a reasonable--a logical, reasonable follow up to the questions. That's why I brought you here when the question was asked.

[Ikimaka's counsel]: Well, I thought you were talking about 404(b). I asked him whether he has any way to know Mr. Ikimaka's opinion, and she's asking him and saying hey, he's speculating about what Mr. Ikimaka's intent is.

THE COURT: But you asked him to speculate on the issue of intent. He answered. So now I'm going to allow the State to ask the question. . . .

. . . .

THE COURT: You opened the door on that. I don't know whether there's any information on that. That's why I brought you up and said this was a risky line of questioning. I mean, it was apparent to the Court. But the strategy you take during your questioning, I don't get involved in.

. . . .

. . . But as far as the intent part, sure, I'm going to allow [DPA] to question about intent given it was raised by you in cross-examination. So you cannot raise an issue and then not expect the other parties to follow up on that, so this is just a reasonable follow up. So your objection is overruled. Thank you.

(The following was heard in open court.)

THE COURT: [DPA].

[DPA]: And, Officer [Hsu], would the fact that Mr. Ikimaka tried to stop the police from taking his truck by saying that indicate his intent to possess drugs in the truck?

[Officer Hsu]: Yes.

Officer Agbayani testified to the circumstances of Ikimaka making the statement, "I have Cheri's bag in my truck. Can you just arrest me for theft and don't take my truck?" During Officer Agbayani's testimony, the court struck a line of

questioning as comment on Ikimaka's right to remain silent; this testimony is discussed in depth below. During Ikimaka's cross-examination, Officer Agbayani made reference to Ikimaka not wanting to answer questions.

Ikimaka moved for a judgment of acquittal for insufficiency of evidence of possession. The Circuit Court denied the motion.

Neither Ikimaka nor Numazawa presented evidence or witnesses.

The jury found Ikimaka guilty as charged in both counts and acquitted Numazawa of both charges against her. This appeal followed.

**Ikimaka's Appeal.**

A. <u>Denial of Motion for New Trial.</u>

1. *Ikimaka has failed to show plain error in admitting the drug test results.*

"Part of the foundational prerequisite for the reliability of a test result is a showing that the measuring instrument is 'in proper working order.'" <u>State v. Wallace</u>, 80 Hawai'i 382, 407, 910 P.2d 695, 720 (1996)). Ikimaka challenges only this requirement for admissibility. He states that the "Circuit Court improperly admitted the drug weight and/or test results" (capitalization modified) where the State failed to lay a proper foundation, and argues that the State's expert, Riede, did not know how to calibrate "that machine" and admission of the records of the calibration was error because they are hearsay and do not qualify as business records of Hawai'i's Narcotics Enforcement Division (NED), and because Riede was not properly qualified as a custodian of the records.

a. *Admission of the FTIR test results.*

In this case, analysis to *identify* the substance recovered was done, in part, by the use of the Fourier Transform Infrared Spectrometer (FTIR). However, it does not appear that Ikimaka is challenging evidence of the FTIR test results. Ikimaka provides no record citations for the testimony or exhibits in his points or argument sections, does not present a

description of the evidence he challenges nor identify the "machine" whose results he claims was accepted in error. More importantly, Ikimaka does not explain how his arguments pertain to the FTIR test results. We therefore conclude his arguments do not pertain to the FTIR results and we deem any challenge to these results waived. HRAP Rule 28(b)(7).

                b.    *Admission of the Analytical Balance results.*

While Ikimaka has not provided record citations for, nor description of, the evidence he challenges, he does specifically mention the record of the "chemical balance's manufacturer" and "admission of the weight of the drugs". We therefore conclude that Ikimaka's challenge pertains to the results of the Analytical Balance, which provided the weight of the substances submitted for analysis.

Riede testified that she determined whether the balance was in proper working condition by doing a performance check every day before work by using a set of certified weights, and if the weight results were within tolerances the balance is considered operable. State's Exhibit 46 is the Balance Check Worksheet, which appears to bear Riede's initials for a check completed on January 28, 2015. While the State did not present the testimony of the person who performed the calibration of the weights used to check the Analytical Balance, it did present State's Exhibit 47, a Report of Calibration prepared by Quality Control Services, which identified the weight set by the same serial number as Exhibit P-46, and certified that the weights were in good condition and within established tolerances. The State also produced Exhibits 44 and 45, A2LA Accredited Certificates of Calibration With Data, dated June 16, 2014 and January 28, 2015 respectively, that were also prepared by Quality Control Services for the NED, both pertaining to the same make and model as reflected in Exhibit 46, and both notarized by Riede on their respective dates.

Ikimaka challenges the introduction of these exhibits because they were prepared by a third party and Riede could not authenticate the exhibits. "[W]hen an entity incorporates records prepared by another entity into its own records, they are

admissible as business records of the incorporating entity, provided that it relies on the records, there are other indicia of reliability, and the requirements of [Hawaii Rules of Evidence (HRE)] Rule 803(b)(6)[10] are otherwise satisfied." State v. Fitzwater, 122 Hawai'i 354, 367-68, 227 P.3d 520, 533-34 (2010). Here, based on Riede's testimony, it is clear NED has incorporated the documents into its own records, NED relies on these records, and that they comply with HRE Rule 803(b)(6).

As to other indicia of reliability, in Fitzwater, the supreme court identified evidence of a contractual relationship between the entity creating the record and the incorporating entity as a significant factor in establishing the necessary indicia of trustworthiness. Id. at 369, 227 P.3d at 535. Here, the document itself identifies the NED as the entity for whom the tests were being conducted. In addition, the same firm that certified the weights on December 2, 2013, in Exhibit 47, also calibrated the balance and certified it was working properly on June 16, 2014, and January 28, 2015, thereby indicating an ongoing business relationship. In addition, the Quality Control Services technician, Steven Michael King, who conducted the testing reflected in both Exhibits 44 and 45, attested that he was trained and currently certified to conduct, and did conduct the tests in accordance with his training, and certified that the

---

[10]     HRE Rule 803(b)(6) provides,

**Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(b)     Other exceptions.

. . . .

(6)     Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made in the course of a regularly conducted activity, at or near the time of the acts, events, conditions, opinions, or diagnoses, as shown by the testimony of the custodian or other qualified witness, or by certification that complies with rule 902(11) or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness.

information contained in these reports was accurate, true and correct to the best of his knowledge. These documents were properly admitted as business records because the evidence showed NED incorporated the documents into their own records, NED relied on them, and there was sufficient indicia of reliability. Thus, the State produced sufficient foundation for admission of the Analytic Balance test results.

    2.    *Ikimaka waived challenge to the Ace Hardware Receipt.*

Ikimaka contends the Circuit Court erred in admitting hearsay in the form of an Ace Hardware receipt bearing the name "LARRY IKIMAKA" insofar as it also contained the name of the merchant, the date of the receipt, items purchased, and method of payment. However, Ikimaka waived this hearsay argument by objecting at trial on HRE Rule 403 grounds and not objecting to admission of the exhibit on this ground. State v. Vliet, 91 Hawai'i 288, 298, 983 P.2d 189, 199 (1999) ("Waiver [under HRE Rule 103(a)(1)[11]] will also occur when the trial objection, properly overruled, differs from that pressed on appeal."). Ikimaka concedes the receipt may have been admissible for the limited purpose of showing that "a piece of paper bearing [Ikimaka's] name was found" and does not argue that the Circuit Court's ruling on his motion in limine based on HRE Rule 403 was error.

Based on this record, we cannot conclude that the alleged hearsay items affected Ikimaka's substantial rights and therefore choose not to notice plain error. See e.g., State v. Fox, 70 Haw. 46, 56, 760 P.2d 670, 676 (1988).

---

[11]    HRE Rule 103(a)(1) provides, in pertinent part: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]"

3.    *The Circuit Court Did Not Abuse Its Discretion by Allowing Officer Hsu to Give His Lay Opinion.*

Ikimaka contends the Circuit Court erred by denying his New Trial Motion because Officer Hsu was allowed to testify to his opinion regarding Ikimaka's state of mind.  Ikimaka argues that, under HRE Rules 602 and 701[12] taken together, Officer Hsu's testimony on Ikimaka's intent was impermissible speculation.

The challenged testimony was elicited on redirect in the following exchange:

> Q.  Officer [Hsu], when you made the stop of Larry Ikimaka, were you aware if anyone else had told Larry Ikimaka why you were pulling him over?
>
> A.  No.
>
> Q.  Now, I believe Mr. Meyers asked about Larry Ikimaka's intent regarding the drugs found in the vehicle. As a police officer, would you say that Larry Ikimaka had intent to possess drugs, had knowledge of drugs, if he stated "Just arrest me and don't take my truck"?
>
> .  .  .  .
>
> (The following was heard at the bench.)
>
> [Ikimaka's Counsel] MR. MEYERS:  I think it calls for speculation.
>
> THE COURT:  This is all the intent questions that was asked about what the intent that was asked during cross-examination.
>
> MR. MEYERS:  But the intent--but he can't testify-- he's speculating as to what my client.

----

[12]    HRE Rule 602 provides:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony.  This rule is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses.

HRE Rule 701 provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

THE COURT: You asked him to speculate about intent, so this is just a reasonable--a logical, reasonable follow up to the questions. That's why I brought you here when the question was asked.[13]

---

[13]    The exchange during Ikimaka's cross-examination was as follows:

Q. You never saw Mr. Ikimaka smoking or otherwise ingesting any drugs; correct?

A. For that night or--

Q. Ever?

A. Yes. I never seen him do that, yes.

Q. And you have no way of knowing whether Mr. Ikimaka--

THE COURT: Approach.

(The following was heard at the bench.)

THE COURT: You just realize you asked a very open-ended question and--

MR. MEYERS: I knew the answer, Judge.

THE COURT: So it's real risky. I just want to say I thought it was a very risky question and that is open for the redirect examination. Okay. Thank you.

(The following was heard in open court.)

BY MR. MEYERS:

Q. Officer [Hsu], you have no way of knowing whether Mr. Ikimaka ever intended to possess any of those drugs; correct?

A. Correct.

[DPA]: Your Honor, approach.

THE COURT: Approach.

(The following was heard at the bench.)

THE COURT: This is an interesting question. So, [DPA], let me hear the argument.

[DPA]: First of all, it's speculation. The officer's not going to (inaudible). Third, it's a question for the jury--I mean intended--

THE COURT: I think I'm going to allow him to answer because this is another area of redirect that you can go into. The door was opened, how you establish intent and all of that. You can do what you need to, but the issue of intent was raised by Mr. Meyers, but only for Mr. Ikimaka. It wasn't raised for Ms. Numazawa.

You have to see how Mr. Castillo addresses this issue, whether you're able to question Mr. Officer [Hsu] along (inaudible) but the issue of intent was raised.

MR. MEYERS: Well, I thought you were talking about 404(b). I asked him whether he has any way to know Mr. Ikimaka's opinion, and she's asking him and saying hey, he's speculating about what Mr. Ikimaka's intent is.

THE COURT: But you asked him to speculate on the issue of intent. He answered. So now I'm going to allow the State to ask the question. You also asked questions about whether he had prior drug use. I don't know whether he did or didn't, but that certainly opens the door.

MR. MEYERS: I didn't ask that question. I asked on that date and he said "ever?" So I didn't want to leave it hanging for the jury. That's why I said "yeah" after. That's the way he responded.

THE COURT: You opened the door on that. I don't know whether there's any information on that. That's why I brought you up and said this was a risky line of questioning. I mean, it was apparent to the Court. But the strategy you take during your questioning, I don't get involved in.

MR. MEYERS: I did that but what I'm saying with regards to--I don't think she's allowed to ask him if he has a prior history unless she can go through the whole 404(b). That's not what I asked him. I asked him on that day and he asked me "ever?" So it wasn't fair to me to leave it hanging for the jury.

THE COURT: I don't know what's fair or not. All I know is the question was asked so I'm going to allow it. I don't know if there's any relevant information. But as far as the intent part, sure, I'm going to allow [DPA] to question about intent given it was raised by you in cross-examination. So you cannot raise an issue and then not expect the other parties to follow up on that, so this is just a reasonable follow up. So your objection is overruled. Thank you.

(The following was heard in open court.)

THE COURT: [DPA]

BY [DPA]:

Q. And, Officer [Hsu], would the fact that Mr. Ikimaka tried to stop the police from taking his truck by saying that indicate his intent to possess drugs in the truck?

A. Yes.

In State v. Tucker, we set forth a liberal standard for admitting lay opinions into evidence under HRE Rule 701. 10 Haw. App. 73, 91, 861 P.2d 37, 47 (1993), on remand from 10 Haw. App. 43, 861 P.2d 24 (1993) (discussing the commentary to the identical federal rule). "As long as (1) the witness has personal knowledge of matter that forms the basis of the testimony; (2) the testimony is rationally based on the witness' perception; and (3) the opinion is 'helpful' to the jury (the

15

principal test), the opinion testimony is admissible." Id. (citation omitted). "[A]dmission of opinion evidence is a matter within the discretion of the trial court, and only an abuse of that discretion can result in reversal." Id. at 89, 861 P.2d at 46 (citation omitted).

Tucker was a case of child murder by omission in which we affirmed the admission of lay opinion evidence regarding the defendant-mother's lack of remorse for not seeking medical attention for her child as evidence of intent to murder the child. Id. at 91-92, 861 P.2d at 47. We concluded the opinions were based on personal knowledge, observations, and perceptions of the defendant gleaned from extensive discussions following the child's admission to the hospital and his death, and that the testimony was helpful to the jury to determine the defendant's intent to murder because a lack of remorse would be expected if she intentionally did not take her baby to the hospital knowing that he was seriously injured. Id. We deemed the opinion evidence admissible. Id.

Here, while Officer Hsu did not have personal knowledge of the statement, he testified that his beat partner told him that Ikimaka made the statement and there is no dispute that Ikimaka made the statement. Officer Hsu was the officer that first made contact with Ikimaka, was present throughout the traffic stop, was aware that drugs were later found in the car, had interacted with Ikimaka in the past, and had seven years of experience as an officer interacting with criminal suspects. Thus, the opinion was rationally related to Officer Hsu's knowledge, experience, and perceptions.

Moreover,

The law recognizes the difficulty by which intent is proved in criminal cases. We have consistently held that since intent can rarely be proved by direct evidence, proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the act is sufficient to establish the requisite intent. Thus, the mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances.

Tucker, 10 Haw. App. at 92, 861 P.2d at 47 (quoting State v. Sadino, 64 Haw. 427, 430, 642 P.2d 534, 536-37 (1982)). Thus, Officer Hsu's testimony was helpful to the jury to determine the

defendant's intent to possess the contraband because it provided an opinion of an individual with experience in conducting vehicle stops. See State v. Jenkins, 93 Hawai'i 87, 105, 997 P.2d 13, 31 (2000) (non-expert police opinion helpful because of experience in gun transport). Ikimaka does not suggest this opinion would have required "scientific, technical, or other specialized knowledge," such that expert testimony would have been required pursuant to HRE Rule 702. Officer Hsu's testimony was not that Ikimaka had the requisite intention, but that in his experience Ikimaka's actions manifested an indication of intent, which is properly admissible lay opinion. See State v. Yip, 92 Hawai'i 98, 107, 987 P.2d 996, 1005 (App. 1999) ("There is a small but significant difference between a witness testifying directly as to another's state of mind . . . and a witness testifying that another person manifested" state of mind.).

Finally, the evidence was more probative than prejudicial under HRE Rule 403.[14] Tucker, 10 Haw. App. at 92, 861 P.2d at 48. Evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis." State v. Kassebeer, 118 Hawai'i 493, 507, 193 P.3d 409, 423 (2008) (citation and internal quotation marks omitted). Generally, when a party raises an issue it may be fully explored by the adverse party. See State v. McElroy, 105 Hawai'i 352, 357, 97 P.3d 1004, 1009 (2004). Here, the testimony was relevant to an element of the offenses--knowledge or intent--and was thus probative. Additionally, Ikimaka opened the door--in spite of the court's warning--by questioning Officer Hsu about Ikimaka's intent. The State properly explored Officer Hsu's knowledge or impressions of Ikimaka's intent, giving context to Officer Hsu's answer to Ikimaka's question. The jury had already heard Officer Hsu testify that he "had no way of knowing" Ikimaka's intent to possess the drugs, as well as that he was aware of the circumstances surrounding and reasons for Ikimaka's arrest when

---

[14] HRE Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."

he heard Ikimaka's statement, "Just arrest me and don't take my truck." On this record, we cannot say the jury would have been misled into making a decision on an improper basis by this testimony. Therefore, the questioning was permissible under HRE Rule 403.

Thus, as there was a proper basis to admit HRE Rule 701 lay opinion testimony and the evidence was not improper under HRE Rule 403, the Circuit Court did not abuse its discretion in permitting Officer Hsu's testimony.

> 4. *The DPA Did Not Commit Misconduct by Eliciting Testimony on Ikimaka's Silence After Receiving Miranda Warnings.*

Ikimaka asserts the prosecutor committed misconduct by eliciting testimony about Ikimaka's silence after he received Miranda warnings in violation of his Fifth Amendment privilege to remain silent.

> In cases where the prosecution elicits from a witness information regarding the defendant's prearrest silence, the test is whether the prosecutor intended for the information elicited to imply the defendant's guilt or whether the character of the information suggests to the factfinder that the defendant's prearrest silence may be considered as inferential evidence of the defendant's guilt.

State v. Tsujimura, 140 Hawai'i 299, 315, 400 P.3d 500, 516 (2017).

Here, unlike the cases Ikimaka cites, the complained-of examination of the officer was in the course of introducing Ikimaka's *statement* to the police. The exchange was as follows:

> [DPA]: When you first got to the Kintaro's area, who was there?
>
> [Officer Agbayani]: Officers [Hsu], Larry Ikimaka, and Liane Henderson.
>
> [DPA]: Okay. And did you speak to Larry?
>
> [Officer Agbayani]: Yes.
>
> [DPA]: And you asked Larry if he wanted to talk to you about what had happened with the purse?
>
> [Officer Agbayani]: Yes.
>
> [DPA]: And he didn't want to talk to you?
>
> [Officer Agbayani]: Yes.

[DPA]:  And because he didn't want to talk to you, you didn't ask him any questions?

[Officer Agbayani]: No, I did not.

[DPA]:  And after he initially told you that he didn't want to talk to you --

THE COURT:  Approach.

The court then stopped the questioning and instructed the jury:

Ladies and gentlemen of the jury, the last line of questioning I'm striking for you not to consider in any way. If a person decides to exercise their right to remain silent, it's not to be used against them.  They have a constitutional right to do that.  You are not to consider it in any way in your deliberations.

Immediately following this instruction, the DPA requested another bench conference when the following took place:

[DPA]:  I did want to ask him the fact that he was walking away when the statement was made.  Is that --

THE COURT:  Why then are you leading whether he actually (inaudible).

[DPA]:  Well, there was follow up as to how far he was, but the fact --

THE COURT:  I'm going to -- I'm already allowing the statement.  The issue of whether it's admissible or not, whether it's objectionable, that's already been addressed. So I'm trying not to relitigate pretrial rulings.

[DPA]:  So don't ask the questions about--

THE COURT:  Just ask statement.  Was this his statement?

[DPA]:  Okay.

THE COURT:  You don't want to get into the circumstances.  That's why I had to strike the prior testimony.

[DPA]:  Okay.

The DPA then asked, "And, Officer Agbayani, while you were at Kintaro's, Larry Ikimaka stated to you, 'I have Cheri's bag in my truck.  Can you just arrest me for theft and don't take my truck?'" which the officer affirmed.

Based on the foregoing, it appears that, while inartful, the DPA was attempting to set the physical circumstances of the permitted statement:  that Officer Agbayani was walking away from Ikimaka when the latter approached and called out the statement.  The DPA was not attempting to comment

on Ikimaka's silence. Thus, it does not appear the prosecutor intended to use Ikimaka's silence to imply his guilt.[15]

Neither is the second part of the test, whether the character of the information suggests to the fact finder that the defendant's prearrest silence may be considered as inferential evidence of the defendant's guilt, present here. Again, the challenged testimony set the stage for the statement that Ikimaka made. The implication--that despite initially declining to answer questions, Ikimaka chose to speak--is not reflective of guilt. Furthermore, the Circuit Court immediately struck the challenged exchange and twice warned the jury "not to consider [the line of questioning] in any way[.]" It is well-settled that "[a] jury is presumed to have followed the court's instructions." State v. Balanza, 93 Hawai'i 279, 289, 1 P.3d 281, 291 (2000). Ikimaka's silence was not considered as inferential evidence of his guilt because the jury was instructed not to consider the testimony about Ikimaka not wanting to talk.[16]

_____

[15] We note that, at the time of this trial, it had not been decided by either the United States Supreme Court nor the Hawai'i Supreme Court that a defendant's right to remain silent existed prior to arrest, or whether prearrest silence could be used against a defendant at trial. Tsujimura, 140 Hawai'i at 309-12, 400 P.3d at 510-12. Nevertheless, from the context of the examination, we are convinced it was not the DPA's intent to do so.

[16] Ikimaka argues that Officer Agbayani's response on cross-examination by Ikimaka where he mentioned Ikimaka's unwillingness to answer questions "underscored" his position that the "risk that the jury will not, or cannot, follow instructions is so great" that we cannot presume the jury followed the Circuit Court's cautionary instruction. However, we disagree with Ikimaka's interpretation of the record. It appears that, like the DPA's questions, the officer's statement was made in the context of clarifying the circumstances of Ikimaka's statement regarding arresting him for theft and not taking his truck. It appears that Ikimaka's counsel was mistaken about the physical circumstances of Ikimaka's statement and Officer Agbayani made the challenged reference in the course of this discussion, apparently explaining why he was walking away from Ikimaka at the time. The exchange, in pertinent part, was as follows:

> Q. And when Mr. Ikimaka made whatever statement he made, he was walking away from you; right?
>
> A. Say it again. He was walking away? Is that what you're saying, sir?
>
> Q. Yeah.
>
> A. He's not walking away.
>
> Q. He wasn't walking away? He was right in front of you face to face?

(continued...)

20

Therefore, because the prosecutor's intent was not to adduce evidence of Ikimaka's guilt and the fact finder could not infer guilt from the evidence, the State did not violate Ikimaka's right against compelled self-incrimination and did not commit misconduct.

> 5. *The Circuit Court Did Not Err by Refusing to Sever Ikimaka's Trial from Numazawa's Trial.*

Ikimaka argues the Circuit Court erred when failing to sever his trial from Numazawa's trial because a joint trial substantially prejudiced his rights and impaired his ability to present his defense.

Hawai'i Rules of Penal Procedure (HRPP) Rule 14, which provides for severance, states:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in a charge or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

"When deciding an HRPP Rule 14 motion for severance, the trial court must 'balance the possible prejudice to the defendant from joinder with the public interest in efficient use

_____

[16](...continued)

A. Yes.

Q. So when you said he was 15 to 20 feet away, what did you mean when you answered [the DPA] that he was 15 to 20 feet away?

A. That's when he said something to me.

Q. Okay. And when he was 15 to 20 feet away from you and said something to you, you were walking away from him or he was walking away from you or no?

A. I was walking away from him, but this is--he's also approaching me. Because when I left him, I have to inform my beat partner that he wasn't--he doesn't want to answer my questions. And then, you know--I mean, I'm not saying that I have good peripheral views, but we always look --for security reasons, we always like this, our head is always on swivel. I can see him, you know, kind of like coming towards me.

Q. And that's when he talked to you?

A. When he said, yes, that statement, sir.

Q. Nothing further, your Honor.

of judicial time through joint trial of defendants and offenses which are connected.'" State v. Timas, 82 Hawai'i 499, 512, 923 P.2d 916, 929 (App. 1996) (quoting State v. Matias, 57 Haw. 96, 98, 550 P.2d 900, 902 (1976)). "Upon review, the appellate court may not conclude that the defendant suffered prejudice from a joint trial unless it first concludes that a defendant was denied a fair trial. What might have happened had the motion for severance been granted is irrelevant speculation." Id. (block quote format altered, brackets and ellipses omitted) (quoting State v. Gaspar, 8 Haw. App. 317, 327, 801 P.2d 30, 35 (1990)). "It is well settled that defendants are not entitled to severance merely because their defenses are inconsistent or they may have a better chance of acquittal in separate trials." State v. Walton, 133 Hawai'i 66, 84, 324 P.3d 876, 894 (2014) (citing Zafiro v. United States, 506 U.S. 534, 540 (1993)). "Rather, 'in order to establish an abuse of discretion, the defendant[ ] must demonstrate that clear and manifest prejudice did occur.'" Id. at 85, 324 P.3d at 895 (quoting United States v. Tootick, 952 F.2d 1078, 1083 (9th Cir. 1991)) (brackets in original).

Ikimaka contends he was denied a fair trial because (1) evidence was introduced that would not have been admissible in a separate trial, and (2) he was prevented from introducing evidence that would have been admissible in a separate trial. Ikimaka does not contend that he and Numazawa had irreconcilable defenses.

As to the first ground, Ikimaka argues that "None of [Numazawa's] statements, or any reference to her purse, or the contents of the purse, would have been permissible in a separate trial involving only [Ikimaka], and the specific charges actually levied against him." This unequivocal statement is not supported by the record before us. The most significant evidence regarding Numazawa's purse was Ikimaka's own statement, "I have Cheri's bag in my truck. Can you just arrest me for theft and don't take my truck?" As discussed above, this statement would have remained highly probative of Ikimaka's intent to possess the items inside the truck irrespective of Numawaza's joinder, subject to HRE Rule 403 balancing, in a severed trial.

Further, the Circuit Court excluded the 911 call, which contained specific reference to theft, but ordered that "the parties shall be allowed to reference that Defendant Numazawa called 911 and informed dispatch that Defendant Ikimaka took her purse."[17] The facts leading to Ikimaka's stop by police would also have remained relevant and been subject to HRE Rule 403 balancing. To the extent that other witnesses testified or Numazawa's counsel argued about a theft, presentation of this evidence was not, strictly speaking, due to the failure to sever trials. Rather, it was incumbent upon Ikimaka's counsel to object and request that the references be stricken.

The burden is on Ikimaka to demonstrate that he received an unfair trial because evidence was introduced that would not have been admissible in a separate trial. Timas, 82 Hawai'i at 511, 923 P.2d at 928. Thus, had the motion to sever been granted, the evidence that Ikimaka raises as prejudicial may or may not have been admitted because it would have been subject to HRE Rule 403 balancing. On appeal, we will not speculate as to what might have happened had the motion to sever been granted, therefore Ikimaka has not met his burden. Id. at 512, 923 P.2d at 929.

As to his second ground, Ikimaka asserts he was prejudiced because he was prevented from introducing evidence that would have been admissible in a separate trial. Ikimaka argues that he was prevented from eliciting testimony from Officer Hsu that the vehicle was seized in part because of Numazawa's prior drug history. Prior to trial, in a hearing on the motion to quash the search warrant and suppress the evidence, Ikimaka questioned Officer Hsu on whether Numazawa's drug history played a part in seizing the vehicle. Officer Hsu acknowledged that was one of the reasons, but that the main reason was that the alleged theft occurred.

---

[17] The transcript of the hearing on the motions in limine is not on the record before us, so the court's specific reasoning is not clear. In its Answering Brief, the State cites to this undocketed transcript in anticipation of its entry, but it appears that it was never entered.

The defendant bears the burden of demonstrating prejudice. Timas, 82 Hawai'i at 511, 923 P.2d at 928. In Walton, the supreme court, discussing State v. Mabuti, 72 Haw. 106, 807 P.2d 1264 (1991), noted that prejudice occurs when the defendant is prevented from presenting exculpatory evidence. 133 Hawai'i at 85-86, 324 P.3d at 895-96. Here, evidence that Numazawa had a prior drug history was not exculpatory of Ikimaka's possession of the methamphetamine and paraphernalia with which he was charged and we will not speculate on what effect that evidence would have had. Therefore, Ikimaka fails to meet his burden of demonstrating that he was prejudiced because he was prevented from introducing evidence that would have been admissible in a separate trial.

Thus, Ikimaka does not demonstrate he received an unfair trial and his point of error is without merit.

B.   The Circuit Court Did Not Err in Declining to Enter a Judgment of Acquittal Where There Was Sufficient Evidence Presented of Constructive Possession.

Ikimaka argues there was insufficient evidence presented to support possession of the contraband. [OB at 27.] HRS § 712-1242(1)(b). "To support a finding of constructive possession the evidence must show 'a sufficient nexus between the accused and the [item] to permit an inference that the accused had both the power and the intent to exercise dominion and control over the [item].' Mere proximity is not enough." State v. Mundell, 8 Haw. App. 610, 622, 822 P.2d 23, 29 (1991), overruled on other grounds by Jenkins, 93 Hawai'i at 112, 997 P.2d at 38 (citation omitted).

In State v. Moniz, this court listed several factors that other courts have considered to infer a nexus between a defendant and drugs to support a finding of drug possession:

> 1) the defendant's ownership of or right to possession of the place where the controlled substance was found; 2) the defendant's sole access to the place where the controlled substance was found; 3) defendant under the influence of narcotics when arrested; 4) defendant's presence when the search warrant executed; 5) the defendant's sole occupancy of the place where the controlled substance was found at the time the contraband is discovered; 6) the location of the contraband; 7) contraband in plain view; 8) defendant's proximity to and the accessibility of the narcotic; 9) defendant's possession of other contraband when arrested; 10) defendant's incriminating statements when arrested;

24

11) defendant's attempted flight; 12) defendant's furtive gestures; 13) presence of odor of the contraband; 14) presence of other contraband or drug paraphernalia, not included in the charge; 15) place drugs found was enclosed.

92 Hawai'i 472, 476, 992 P.2d 741, 745 (App. 1999) (citation and alteration omitted). Additional factors that have been deemed relevant include, the presence of large sums of money, and the fact that drugs were found among the defendant's personal belongings. Id. (citations omitted).

Here, there was testimony that the maroon pouch in which the drugs and zip-lock bags were found was discovered under Ikimaka's seat in the truck, he was seen "maybe more than two times" in the past driving the same truck, he asked Officer Agbayani "to just arrest [him] for theft and don't take [his] truck," there was $1,400 in cash, glass pipes with methamphetamine residue and scales, and an Ace Hardware receipt bearing the name "Larry Ikimaka" found in the maroon pouch. Taking this evidence in the light most favorable to the prosecution, State v. Timoteo, 87 Hawai'i 108, 112-13, 952 P.2d 865, 869-70 (1997), the evidence presented was sufficient to establish Ikimaka's constructive possession of the drugs and paraphernalia.

Therefore, we conclude Ikimaka's appeal to be without merit.

**State's Cross-Appeal**

The Circuit Court Erred in Granting Ikimaka's Motion to Stay Because It Failed to Make the Necessary Findings

The State argues the Circuit Court abused it discretion by granting Ikimaka's Motion to Stay without entering the findings required by State v. Cullen, 86 Hawai'i 1, 946 P.2d 955 (1997). On January 13, 2017, in response to the State's December 15, 2016 motion for revocation of bail, this court entered an order denying the motion but temporarily remanding this case for the Circuit Court to enter a written statement of its reasons for granting Ikimaka's motion for stay of sentence pending appeal. On January 27, 2017, the Circuit Court entered its Findings of Fact; Conclusions of Law; Order Granting Defendant Larry Ikimaka's Motion for Stay of Execution of

Sentence Pending Appeal. To date, no renewed motion for revocation of bail has been filed. Therefore, it appears that the State's appeal is moot.

## VI. CONCLUSION

For the foregoing reasons the December 30, 2015 Second Amended Judgment of Conviction and Probation Sentence Notice of Entry entered by the Circuit Court of the Fifth Circuit is affirmed. The State's Cross-Appeal in this case is dismissed as moot.

DATED: Honolulu, Hawai'i, November 27, 2019.

On the briefs:

Rosa Flores,
for Defendant-Appellant/
Cross-Appellee.

Tracy Murakami,
Deputy Prosecuting Attorney,
County of Kauai,
for Plaintiff-Appellee/
Cross-Appellant.

Chief Judge

Associate Judge

Associate Judge